(76 South. 245)

No. 21428.

KRAUSE v. BOMER-BLANKS LUMBER CO.

(June 11, 1917.)

*(Syllabus by the Court.)*

MASTER AND SERVANT ☞125(1)—INJURIES TO SERVANT—DEFECTIVE APPLIANCES.

The master is liable in damages for personal injuries suffered by his servant as a result of a defect in an appliance furnished by the master to the servant for the performance of his work, if the master knew the appliance was defective or could have discovered the defect by proper inspection.

Appeal from Twenty-First Judicial District Court, Parish of Pointe Coupee; Joseph E. Le Blanc, Jr., Judge.

Action by Paul A. Krause against the Bomer-Blanks Lumber Company. From a judgment for plaintiff, defendant appeals. Amended and affirmed.

Albin Provosty, of New Roads, for appellant. Jacob H. Morrison and Claiborne, Claiborne & Claiborne, all of New Roads, for appellee.

O'NIELL, J. The plaintiff sued for $2,500 damages for personal injuries suffered in an accident while he was employed in the defendant's sawmill. Judgment was rendered in his favor for $2,350, and the defendant has appealed. The plaintiff was employed as a log scaler, or timber measurer. It was his duty to operate the hoisting apparatus, by which the log car was pulled up into the mill on an inclined track a distance of about 80 feet. The apparatus consisted of a drum on which the cable attached to the log car was wound, and an iron pulley, measuring 12 inches across the face and about 4½ feet in diameter, on the end of the drum shaft. The loaded log car was hoisted by applying a small wooden friction pulley to the iron pulley on the end of the drum shaft. When the log was rolled off the car, the empty car was sent back for another log by simply releasing the friction pulley, shoving the empty car over the end of the inclined track and allowing it to run down of its own weight. To prevent the car from running down too fast and perhaps causing an accident, it was necessary at times to apply a brake to the iron pulley. The brake was a very simple contrivance. It consisted of a 2x6" oak beam, one end of which swung on an iron bolt, the other end being tapered to form a handle. The brake beam extended from the iron bolt forward, immediately above the iron pulley, the handle of the beam pointing in the direction in which the empty car ran down the track, the direction in which the drum and pulley revolved when the car ran down. When not in use, the brake beam was held off of the pulley by an iron hook above and in front of the pulley. To stop the descending car, or control its speed, the operator simply took the handle of the brake beam out of the hook and pressed the beam down against the face of the revolving pulley. While the plaintiff was doing that, the face of the wheel or pulley smashed, and a part of the

broken wheel struck him and caused the injuries for which this suit was brought.

The evidence discloses that the pulley was secondhand when installed in the defendant's mill, about six months before the accident, and that it had only been in actual use about 3 months in the defendant's mill. Before it was installed one of the helpers of the superintendent of construction observed that there was a crack about halfway across the face of the pulley, and he called the superintendent's attention to it. The latter replied, somewhat indifferently, that the pulley was all right, and he did not notify the manager or any other representative of the defendant company that the pulley was broken. It also appears that, although the manager of the mill inspected all of the machinery in a general way every day, he did not learn that the pulley was cracked before the accident. There is no reasonable doubt that the cause of the breaking of the pulley was the defect in it, because the break was a continuation of the original rusty crack. A segment of about one-third of the circumference, commencing at the old crack, broke out.

The defendant advances the theory that the plaintiff broke the pulley by bearing down too hard on the brake beam, and the defendant therefore contends that the accident was the result of the plaintiff's negligent handling of the apparatus. The evidence does not support that contention. The evidence shows, and it is not disputed, that the plaintiff had been always careful in operating the machinery. On the occasion of the accident the empty car had only run 15 or 20 feet down the 80-foot incline, and therefore had not gained sufficient momentum or speed to require any extraordinary pressure on the brake beam to stop it. It is true the brake beam itself was broken in the smash-up; and from that the learned counsel for the defendant argues that the plaintiff must have applied too much pressure on the beam. But it is far more probable, from the evidence, that the breaking of the pulley in some way broke the beam than that the plaintiff applied enough pressure to break the beam, and thereby broke the pulley. That the plaintiff applied just enough pressure to break the beam and the pulley simultaneously would have been an extraordinary coincidence, because, if the wooden beam was broken by the pressure applied to it, that would have relieved the pressure on the pulley. The evidence leaves no reasonable doubt that the accident was the direct result of the defect in the iron pulley; and our conclusion is that the defendant is liable under the doctrine that the master must furnish his servant safe appliances with which to do the work required of him.

We think the amount of the judgment, however, is excessive. The plaintiff was confined to his bed one week, to his room 3 weeks, and was under the care of a physician 44 days. He suffered some time thereafter from the injury to his knee. An injury to his kidneys was first thought to be the most serious trouble, but he recovered from that after a few weeks. He claimed $270 for the loss of employment, 60 days at $4.50 a day, and claimed $1,230 for physical pain, and $1,000 for mental anguish and worry. Although the plaintiff was a skilled sawmill man, who had earned $4.50 a day, he was working for $2 a day at the time of the accident. The district judge therefore allowed only $120 for the loss of time; and he allowed the full amount claimed for the other two items of damage. We think $1,000 for the pain and suffering and loss of employment will be ample compensation.

The judgment appealed from is amended by reducing the amount from $2,350 to $1,000, and, as thus amended, the judgment is affirmed; the plaintiff to pay the costs of appeal.

PROVOSTY, J., recused.